UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ME2 PRODUCTIONS, INC., <br> Plaintiff(s), <br> v. <br> MIKIYAS BAYU, et al., <br> Defendant(s). | Case No. 2:17-CV-724 JCM (NJK) <br><br> ORDER |

Presently before the court is Magistrate Judge Koppe's report and recommendation ("R&R"). (ECF No. 17). Plaintiff ME2 Productions, Inc. filed an objection to the R&R on June 27, 2017. (ECF No. 23). No defendant has filed a response, and the time to do so has passed.

Also before the court is defendant Carolyn Wilber's motion to dismiss. (ECF No. 29). Plaintiff has not filed a response, and the time to do so has since passed.

Also before the court is plaintiff's motion for entry of clerk's default as to defendants Carolyn Wilber, Miguel Palomares, Jermaine Wooten, Neng Chuang Tan, and Maria Guzman. (ECF No. 33).

**I.      Background**

*i.   BitTorrent swarming*

The following provides a general description of the process of BitTorrent swarming as offered by plaintiff's complaint.[1] *See* (ECF No. 1).

---

[1] Plaintiff's objection cites numerous cases (which in turn cite numerous other cases) that go into significant detail regarding the technology behind BitTorrent swarming. *See, e.g., Malibu Media, LLC v. Weaver*, Case No. 8:14-cv-1580-T-33TBM (M.D. Fla. Apr. 8, 2016); *Malibu Media, LLC v. John Does 1-10*, 12-cv-2949 (S.D.N.Y. Aug. 21, 2012) (Doc. # 7); *Patrick Collins, Inc. v. John Does 1-15*, Civ. Action No. 11-cv-02164-CMA-MJW (D. Colo. Feb. 8 2012); *see also*

**James C. Mahan**
**U.S. District Judge**

BitTorrent is a peer-to-peer file sharing protocol (i.e. a set of computer rules) designed to share data and electronic files over the internet.  The protocol was designed to distribute large amounts of data without unduly burdening a source computer or network.  Instead of connecting one computer directly to another and sharing a file by direct upload and download, BitTorrent protocols let users join "swarms."  The swarm is a cluster of connected computers whereby users can simultaneously upload to and download from multiple other users.

In order to connect to a BitTorrent swarm, an individual user must download a BitTorrent client.  The client is a software program downloaded from the internet.  The client functions as an interface for the user while he or she uses the BitTorrent protocol to upload and download data.

Once a user has an operative interface, he or she may upload new files onto the network. New files are called "initial seeds," and the uploader is the "initial seeder."  The first action in the uploading process occurs when the initial seeder creates a torrent descriptor file.  The initial seeder then divides the data into identically sized groups of bits, commonly referred to as "pieces."  The client software program will then give each of the pieces a "hash," which is a random and unique alphanumeric combination.  The hash is recorded in the torrent file, and serves as an identifier of the piece of data.

In addition to containing the hash identifiers, the torrent files have other bits of identifying information to verify the integrity of downloaded content and to streamline the seeding process. The announce section of a torrent file contains uniform resource locators (URLs) for "trackers." A tracker is a computer or group of computers that tells a peer user's computer which other computers have particular pieces of the file.  The tracker computer also facilitates the data exchange between the computers.

After the initial seeder creates the torrent file and uploads it onto a torrent site, peer users begin to download and upload the computer file linked to the torrent.  Per the protocol, the initial seed's computer will send different pieces of the file to peers attempting to download the file. After a peer has downloaded a particular piece of the file, it begins to upload that piece to other users to download.  As mentioned, this process creates a BitTorrent "swarm."

---

*Patrick Collins, Inc. v. John Does 1-21*, No. 11-15232, 2012 WL 1190840, at *1-5 (E.D. Mich. Apr. 5, 2012); *First Time Videos, LLC v. Does 1-76*, 276 F.R.D. 254, 255 (N.D. Ill. 2011).

Once a peer has downloaded the entire file by downloading each of its pieces, the client reassembles the pieces and the peer is able to view the file as a whole. Additionally, the peer is considered an "additional seed," as it has the complete reconstituted file and can continue to redistribute all of its pieces.

ii.     *Plaintiff's movie and defendants' conduct*

Plaintiff is the owner of United States Copyright Registration Number PA 1-998-057, 2016-08-02 for the motion picture entitled Mechanic 2: Resurrection ("Mechanic 2"). (ECF No. 1 at 3). Plaintiff released the film to movie theaters both in the United States and abroad. (ECF No. 1 at 3). Plaintiff alleges that, since the movie's release, it has been the subject of millions of BitTorrent uploads and downloads that constitute unauthorized reproduction and distribution of plaintiff's copyrighted work. (ECF No. 23).

Plaintiff hired the services of Maverickeye UG, a forensic investigation service (hereinafter, "the investigator"), to help plaintiff identify persons who have used the internet and BitTorrent protocol to "reproduce, distribute, display or perform" Mechanic 2. (ECF No. 1 at 7). Using a process detailed more fully in plaintiff's complaint and objection, the investigator isolated transactions that contained a unique hash number which plaintiff states is a piece of Mechanic 2. (ECF Nos. 1, 23). The investigator's analysis, which is contained in an exhibit attached to plaintiff's complaint, states that defendants would connect to the investigative server and transmit at least a portion of a digital media file containing the unique hash number.[2] (ECF No. 1 at 8). When the investigator "analyzed each BitTorrent 'piece' distributed by each IP address listed on Exhibit '1' [he] verified that re-assemblage of the pieces using a BitTorrent Client results in a fully playable digital motion picture of [Mechanic 2]." (ECF No. 1 at 8).

As of June 2017, the investigator had identified 113,962 instances of copying and distribution of Mechanic 2 within the state of Nevada. (ECF No. 23 at 11). Plaintiff filed lawsuits against what it deemed "the one to two percent (1-2%) of the most egregious infringers within

---

[2] Plaintiff's complaint is confusing in this respect. It suggests in its explanation of BitTorrent swarming that a hash number is connected to a unique piece of a digital media file, *see* (ECF No. 1 at 5), but in its explanation of the investigator's work it suggests that the unique hash number used by the investigator refers to an entire digital media file, *see* (ECF No. 1 at 8).

**James C. Mahan**
**U.S. District Judge**

- 3 -

each swarm." (ECF No. 23 at 12).  Plaintiff joined multiple defendants in each lawsuit, with its criteria for joinder being that defendants "were caught sharing the same digital file, containing the same copy of [Mechanic 2], over the same peer-to-peer file sharing network, as part of the same so-called 'swarm,' within the same jurisdiction, within the same finite period of time (usually a period of about two weeks)." (ECF No. 23 at 12).  Plaintiff also engaged in a pre-filing review of the data with a third-party consultant before proceeding to file any lawsuit.  (ECF No. 23 at 12).

Plaintiff initially filed the instant lawsuit against 21 Doe defendants.  (ECF No. 23 at 12).  After conducting limited discovery to obtain the names of individuals connected with the allegedly infringing ISP numbers, plaintiff reduced the number of defendants from 21 to 13.  (ECF No. 23 at 13).  Plaintiff asserts that once it either settles its dispute with a particular defendant or finds out that the defendant's circumstances present unique issues of fact or law, plaintiff moves to dismiss or sever its cause of action against that defendant.[3]  (ECF No. 23 at 13).

On April 27, 2017, Magistrate Judge Koppe issued an order to show cause as to why the claims against all but the first-named plaintiff should not be severed.  (ECF No. 6).  On May 18, 2017, plaintiff filed a response.  (ECF No. 11).  On June 13, 2017, Magistrate Judge Koppe issued the instant report and recommendation, recommending severance.  (ECF No. 17).

**II.      Legal Standard**

This court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate."  28 U.S.C. § 636(b)(1).  Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made."  28 U.S.C. § 636(b)(1).

**III.     Discussion**

Plaintiff objects to the severance of all but the first-named defendant in this case.  Magistrate Judge Koppe's order concluded that defendants' conduct in participating in BitTorrent swarming did not satisfy the requirements for permissive joinder.  Judge Koppe further ruled that,

---

[3] Plaintiff asserts that it follows this procedure for all of its filed cases with this court. (ECF No. 23 at 13).

James C. Mahan
U.S. District Judge

- 4 -

assuming plaintiff had demonstrated the requirements for permissive joinder were satisfied, discretionary severance of all but the first-named defendant was appropriate in this case. Plaintiff asserts that it should be allowed to join multiple defendants in this lawsuit, as the defendants' BitTorrent swarming conduct satisfies the requirements for permissive joinder and such joinder is in the best interests of the court, the defendants, and the plaintiff.

Federal Rule of Civil Procedure 20 describes the rule for permissive joinder of parties. Under Rule 20(a), a person may be joined as a defendant if: (a) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences, and (b) some question of law or fact common to all defendants will arise in the action. Fed. R. Civ. P. 20; *see League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir.1977).

"Rule 20(a) is permissive in character, joinder in situations falling within the rule's standard is not required . . . ." 7 Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure, § 1652 (3d ed.2001). A court may order severance of defendants even when it is satisfied that the requirements for permissive joinder have been met in a particular case. Fed. R. Civ. P. 20. Courts "must . . . determine whether the permissive joinder of a party will comport with the principles of fundamental fairness." *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980); *see also Hard Drive Prods., Inc. v. Does 1-90*, Case No. c 11-03825, 2012 WL 1094653, at *6 (N.D. Cal. Mar. 30, 2012) (holding that joinder and severance decisions must be "in the interest of justice").

District courts within the Ninth Circuit (and across the country) are not uniform on the issue of joinder in BitTorrent litigation, although the majority have prohibited joinder.[4] The Ninth Circuit itself has not addressed the issue, and the only circuit court to rule on joinder in BitTorrent

---

[4] Plaintiff's objection argues that "the majority of District Courts within the Ninth Circuit permit (and in some cases encourage) joinder in BitTorrent litigation." (ECF No. 23 at 14) (footnote omitted). This is a "jaw-dropping misstatement of the Ninth Circuit case law related to joinder in BitTorrent cases." *Id.* As Magistrate Judge Koppe's report and recommendation notes, the majority of the cases on which plaintiff relies to support this proposition discuss only whether to allow discovery as to the identities of doe defendants, and are silent on the issue of joinder. (ECF No. 17 at 5 n.6); *see* (ECF No. 23 Exhibits B, C, F, G, H, K, P, Q, R, S, AB, AK, AL).

swarming cases (the D.C. Circuit) has prohibited joinder, *see AF Holdings, LLC v. Does 1-1,058*, 752 F.3d 990, 998 (D.C. Cir. 2014).

Just recently, another court in this district issued the district's first ruling on the topic of joinder in BitTorrent swarming cases. *See LHF Prods., Inc. v. Smith*, Case No. 2:16-cv-01803-JAD-NJK, 2017 WL 4778594 (D. Nev. Oct. 23, 2017) (Dorsey, J.). The court in *LHF Productions* noted that "[t]here is a major split of authority on the issue [of whether BitTorrent-swarm joinder is appropriate under Rule 20]," and summarized the court's extensive research on the topic. *Id.* at *3. As the court aptly held, "[t]he only thing that is firmly established about this issue is that there is no uniform protocol." *Id.*

The court in *LHF Productions* did not decide the issue of whether BitTorrent swarm joinder constitutes the same transaction or occurrence under Rule 20(a)(2). *Id.* at *4. Instead, the court held that because joinder on its facts caused more harm than good, discretionary severance of all but the first-named defendant was appropriate. *Id.* As this court is presented with substantially similar facts to those of *LHF Productions*, and agrees with the holding and reasoning of that decision, this court will adopt Magistrate Judge Koppe's report and recommendation to sever.

Magistrate Judge Koppe held that discretionary severance was appropriate even assuming that plaintiff had demonstrated that the requirements for permissive joinder under Rule 20 were satisfied. This section of the opinion relies primarily on concerns of the potential for unwieldly discovery and the "serious case management issues" that could plague motions practice and trial proceedings. (ECF No. 17 at 10–11).

Plaintiff asserts that joinder benefits the defendants and is in their best interest. If one defendant raises a valid defense or pursues a productive case management strategy, then other defendants can more easily share in its success. Further, plaintiff argues that defendants can pool their resources to more efficiently defend their cases.

The court disagrees that joinder is in the best interest of defendants. The court in *LHF Productions* cites an earlier case, penned by Magistrate Judge Sorokin of the District of Massachusetts, which describes the "logistical nightmare[s]" created by joinder in BitTorrent swarming cases: each defendant must serve all motions and submissions to all other defendants;

**James C. Mahan
U.S. District Judge**

- 6 -

each defendant has a right to be present at any deposition; and each defendant is likely to present different defenses, thereby creating multiple "mini-trials." *Id.* (citing *Breaking Glass Pictures v. Swarm Sharing Hash File SHA1:£973F491D02C1E0220DBC534D8F8EDC15FC53FAEF*, 2013 WL 2407226, at *3 (D. Mass. May 1, 2013). As the court in *LHF Productions* noted,

> [The] benefits [plaintiff suggests] do not outweigh the potential burdens imposed on [defendants] considering the varied and extensive motion practice that is typical of contemporary litigation, the scheduling conflicts that would inevitably arise when deposing each party, and the likelihood of confusing the issues and parties should the action proceed to trial.

2017 WL 4778594, at *4.

This court holds that joining the defendants in this case would pose substantially similar logistical problems to those articulated in *LHF Productions* and *Breaking Glass*. *See* 2017 WL 4778594, at *4; 2013 WL 2407226, at *3. As Magistrate Judge Koppe's order notes, some of the defendants in companion cases live more than a 400-mile drive from the federal courthouse in Las Vegas.[5] The practicality of including multiple defendants from across the state of Nevada into a single litigation would impose significant burdens upon defendants that would not be present if each case were tried individually. *See LHF Productions*, 2017 WL 4778594, at *4.

Plaintiff argues in response that it is proactively severing parties, which should alleviate any practicability concerns. (ECF No. 23). Plaintiff states that when a defendant raises sufficiently unique defenses to plaintiff's claims, it moves to sever that defendant from the case.[6] (ECF No. 23). Most all of the defendants in this case, and in its many companion cases, have not responded to the operative complaints. And although plaintiff asserts that it is severing only those defendants who raise "unique" defenses, it appears to be severing defendants who raise any defense whatsoever. This undermines plaintiff's earlier argument that defendants will benefit from

---

[5] In this case, plaintiff's initial complaint included five doe defendants from northern Nevada. (ECF No. 1-1). Plaintiff's amended complaint does not include these defendants. (ECF No. 16-1). This may be because the ISP was yet to respond to the subpoena at the time the amended complaint was filed. (*See* ECF. 17 at 10–11 n.10).

[6] Plaintiff also moves to sever defendants whom it has reached a settlement with.

collective litigation as they may share defenses. Plaintiff's litigation strategy does not afford sufficient safeguards to protect the defendants from the prejudice of unfair litigation.[7]

Severing all but the first-named defendant will not unduly burden plaintiff's ability to pursue its claims. As the court in *LHF Productions* noted, plaintiff's argument—that prohibiting BitTorrent-swarm joinder makes copyright enforcement too costly for copyright holders—does not comport with plaintiff's proposition that prohibiting swarm joinder would likely create larger individual judgments against each defendant. 2017 WL 4778594, at *4.

Further, "[t]he copyright-enforcement business model that . . . plaintiffs in these swarm-joinder cases follow imposes a greater burden on the courts and defendants than the burden imposed on the plaintiff by severance." *Id.* "[P]laintiff's desire to enforce its copyright in what it asserts is a cost-effective manner does not justify perverting the joinder rules to first create the management and logistical problems discussed above and then offer to settle with Doe defendants so that they can avoid digging themselves out of the morass plaintiff is creating." *On the Cheap, LLC v. Does 1-5011*, 280 F.R.D 500, 502–03 (N.D. Cal. 2011).

**IV.    Conclusion**

The court holds that discretionary severance is appropriate on these facts, as the burden placed upon defendants and the court if joinder were permitted is greater than the burden placed upon plaintiff of trying each case separately.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Magistrate Judge Koppe's report and recommendation (ECF No. 17) be, and the same hereby is, ADOPTED in part and REJECTED in part, consistent with the foregoing.

IT IS FURTHER ORDERED that all defendants except Mikiyas Bayu be severed from the instant action.

---

[7] Although plaintiff attempts to distinguish the facts of this case (and its management thereof) from other BitTorrent litigation (where the plaintiffs would pursue a single action against hundreds of defendants), plaintiff's current litigation strategy still presents substantial case management concerns (mentioned above) that counsel in favor of severance. *See Patrick Collins, Inc. v. Does 1-9*, Case No. 3:12-cv-01436-H(MDD) 2012 WL 7062535, at *3 (S.D. Cal. Nov. 8, 2012) (holding discretionary severance was appropriate as to nine defendants due to case management and fairness concerns).

**James C. Mahan**
**U.S. District Judge**

- 8 -

1   IT IS FURTHER ORDERED that defendant's motion to dismiss (ECF No. 29) be, and the
2   same hereby is, DENIED as moot.
3   IT IS FURTHER ORDERED that plaintiff's motion for entry of clerk's default (ECF No.
4   33) be, and the same hereby is, DENIED as moot.
5   DATED November 3, 2017.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**